# UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| JAMES RIVER COAL COMPANY, et al., | ) | NO. 303-04095 |
| | ) | |
| | ) | JOINTLY ADMINISTERED |
| Debtors. | ) | |
| | ) | JUDGE MARIAN F. HARRISON |
| | ) | |
| ANTHONY H.N. SCHNELLING, AS TRUSTEE OF THE JRCC UNSECURED CREDITOR LIQUIDATING TRUST, | ) | ADV. NO. 305-0409A |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROTHSCHILD, INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____

# MEMORANDUM OPINION
_____

The Liquidating Trustee (hereinafter "Trustee") filed this adversary proceeding claiming that Rothschild, Inc. (hereinafter "Rothschild") received preferential transfers of $764,333.97 in the 90 days proceeding the bankruptcy filing by James River Coal Company,

together with its direct and indirect wholly owned subsidiaries (collectively, the "debtors"). The matter now before the Court is Rothschild's Motion to Dismiss, or in the Alternative, for Summary Judgment. Rothschild seeks relief on three grounds:

1. The retention and compensation orders previously entered by the Court are res judicata as to the preference claims;

2. The debtors' Plan and Disclosure Statement incorporated into the confirmation order insufficiently disclosed the preference claims against Rothschild and, therefore, are barred by res judicata; and

3. The Trustee is judicially estopped from asserting that the pre-petition payments are preferences because its predecessor in interest (the debtors) asserted a contrary position in Rothschild's Retention Application and also failed to set forth the claims against Rothschild in the Disclosure Statement and Plan.

For the following reasons, the Court finds that the motion should be granted on Rothschild's first issue.

## I. UNDISPUTED FACTS

On March 25, 2003, the debtors commenced their respective reorganization cases by filing voluntary petitions for relief under Title 11 of the United States Bankruptcy Code.

On March 25, 2003, the debtors filed an application for an order authorizing the retention and employment of Rothschild as financial advisor for the debtors (hereinafter the "Retention Application") in accordance with the terms of a letter agreement and

2 - U.S. Bankruptcy Court, M.D. Tenn.

indemnification agreement dated November 4, 2002 (collectively, the "Letter Agreement"). The Court entered an Order approving on an interim basis the retention and employment of Rothschild (hereinafter the "Interim Retention Order") on March 26, 2003, which read, in part:

> It appears that Rothschild does not hold or represent any interest adverse to the Debtors' estates and is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

The United States Trustee filed an objection to the Retention Application on April 17, 2003, based on the amount of the compensation and on the indemnification provision. On May 23, 2003, the Court entered an Agreed Order: (a) resolving objections to the debtors' Application to Employ and Retain Rothschild as Financial Advisor, and (b) authorizing the retention of Rothschild as Financial Advisor to the debtors (hereinafter the "Agreed Retention Order," and together with the Interim Retention Order, the "Retention Orders"), which resolved the United States Trustee's objection to the Retention Application.

On May 28, 2004, Rothschild filed a combined third interim and final application for compensation and reimbursement of expenses (hereinafter the "Final Application"). On July 7, 2004, the Court entered its Order Approving the Third Interim and Final Application of Rothschild for Allowance of Compensation and Reimbursement Expenses (hereinafter the "Order Approving Final Compensation").

3 - U.S. Bankruptcy Court, M.D. Tenn.

On February 25, 2004, the Court entered its Order approving the Disclosure Statement with respect to the debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code. On April 16, 2004, the debtors filed the Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (hereinafter the "Plan"). The Court confirmed the Plan by order entered on April 22, 2004, (hereinafter the "Confirmation Order"). On April 9, 2004, the Official Committee of Unsecured Creditors filed notice of its appointment of Anthony H.N. Schnelling and Bridge Associates LLC as liquidating trustee.

The Trustee commenced this adversary proceeding against Rothschild on March 24, 2005, seeking to recover $764,333.97 pursuant to 11 U.S.C. §§ 547(b), 550.

## II. **STANDARD OF REVIEW**

The defendant filed its motion pursuant to Fed. R. Bankr. P. 7012, or alternatively, under Fed. R. Bankr. P. 7056. Because the Court has reviewed evidence from outside the pleadings in this adversary proceeding, it will review the motion under the summary judgment standard. *See, e.g., Benzon v. Morgan Stanley Distrib., Inc.,* 420 F.3d 598, 603 (6th Cir. 2005) ("[o]rdinarily, when a district court considers evidence outside the pleadings, a 12(b)(6) motion will 'be treated as one for summary judgment and disposed of as provided in Rule 56'") (quoting Fed. R. Civ. P. 12(b)(6)).

Federal Rule of Civil Procedure 56(c), as incorporated by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and/or discovery materials which demonstrate that there is no genuine disputed issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets that initial burden, the burden is shifted to the nonmoving party to go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and/or admissions, designate specific facts showing that a genuine issue of fact does remain for trial.  *Id.; see also Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990) (nonmoving party "must show sufficient evidence to create a genuine issue of material fact" to prevail).

### III.  DISCUSSION

#### A.  RES JUDICATA EFFECT OF RETENTION AND COMPENSATION ORDERS

First, Rothschild asserts that it is entitled to dismissal or summary judgment based on the res judicata effect of this Court's Retention Orders and the Order Approving Final Compensation.  The Court agrees.

5 - U.S. Bankruptcy Court, M.D. Tenn.

On March 25, 2003, the debtors filed an application to retain and employ Rothschild as financial advisor. The Retention Application disclosed that within one year of filing for bankruptcy protection, the debtors paid Rothschild approximately $764,333.97 (the amount the Trustee now seeks in his complaint) for services and expenses. In the Retention Agreement, the debtors proposed to extend the Letter Agreement dated November 4, 2002, (approximately four and one-half months prior to bankruptcy) to calculate compensation for Rothschild post-petition. The Letter Agreement provided that Rothschild was to be paid a monthly fee of $150,000 along with a Completion Fee. The Retention Application did not specifically state that any or all of the pre-petition fees paid were within 90 days of the bankruptcy filing, however, the $764,333.97 had to be incurred between the date of the contract (November 4, 2002) and the date of bankruptcy (March 25, 2003) presumably through monthly fees.

The United States Trustee objected to the proposed compensation and the indemnification provisions of the Letter Agreement but not on the grounds of a potential preference action. On May 23, 2003, the Court entered the Agreed Retention Order resolving the United States Trustee's objection and granting the application to employ. The Letter Agreement, modified and approved by the granting of the employment application, provided that Rothschild could seek a Completion Fee upon confirmation and effectiveness of a plan of reorganization equal to $2,750,000 minus a credit equal to 50% of the monthly fees paid to Rothschild both pre- and post-petition.

Three applications for compensation and reimbursement of fees were filed and approved by order of the Court. The last, a combined third interim and final application provided:

> 2. Under the Engagement Letter, as approved pursuant to the Retention Orders, Rothschild is entitled to payment of, among other things, a cash advisory fee of $150,000 per month as long as the engagement continues (the "Monthly Fee"), plus reimbursement of reasonable and necessary expenses. The Engagement Letter also provides for payment of a completion fee (the "Completion Fee"), payable in cash upon the earlier of (a) the confirmation and effectiveness of a Plan of Reorganization or (b) the consummation of another transaction, equal to (x) $2,750,000.00, minus (y) a credit (the "Monthly Fee Credit") equal to 50% of the Monthly Fees paid to the [sic] Rothschild in excess of $450,000.00. Pursuant to the Retention Orders, Rothschild voluntarily agreed to eliminate the $450,000.00 exclusion from Monthly Fee Credit and instead credit all Monthly Fees against the Completion Fee.
>
> 3. Annexed hereto as Exhibit B are the invoices for the total compensation and expenses sought by Rothschild for the Third Interim Period, including a breakdown of Rothschild's expenses incurred during the Third Interim Period. In summary, during the Third Interim Period, Monthly Fees accrued under the Engagement Letter from December 1, 2003 through and including May 6, 2004 in aggregate amount of $779,032.26. Upon the occurrence of the Effective Date, Rothschild also earned the Completion Fee of $2,750,000.00. After giving effect to the accrued Monthly Fee Credit, which aggregated $1,357,016.13 assuming payment of all Monthly Fees through and including May 6, 2004, the Completion Fee payable to Rothschild during the Third Interim Period equals $1,392,983.87. A final invoice and Completion Fee calculation has been included in Exhibit B. In addition, Rothschild incurred reasonable and necessary expenses during the Third Interim Period in the amount of $15,800.59.

Exhibit B to the Final Application showed the calculation of the Completion Fee and specified that the Monthly Fee Credit deducted from the Completion Fee included both pre- and post-petition monthly fee payments. Specifically, Exhibit B stated that the *total* amount

7 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:05-ap-00409    Doc 39    Filed 04/06/07    Entered 04/06/07 10:25:37    Desc Main
Document    Page 7 of 19

of fees paid pre-petition from November 4, 2002, to March 25, 2003, was $701,129.03.[1]  On July 7, 2004, the Court entered its Order Approving Final Compensation.  This Order approved all compensation and expenses sought by Rothschild in its Final Application.

For the doctrine of res judicata to bar a claim, four elements must be present:

(1) a final decision on the merits by a court of competent jurisdiction;

---

[1] The following calculations were included in Exhibit B:

**Monthly Fees:**

| | | |
|---|---|---|
| Pre-Petition | | |
| November 4 - November 30, 2002 | | $135,000.00 |
| December 2002 - February 2003 | 150,000 | 450,000.00 |
| March 1 - March 24, 2003 | | 116,129.03 |
| Total Pre-Petition | | 701,129.03 |
| | | |
| Post-Petition | | |
| March 25 - March 31, 2003 | | 33,870.97 |
| April 2003 - April 2004 | 150,000 | 1,950,000.00 |
| May 1 - May 6, 2004 | | 29,032.26 |
| Total Post-Petition | | 2,012,903.23 |
| | | |
| Total Monthly Fees | | $2,714,032.26 |

**Completion Fee Calculation:**

| | | |
|---|---|---|
| Gross Completion Fee | | $2,750,000.00 |
| Less: Monthly Fee Credit | 50% | (1,357,016.13) |
| Net Completion Fee Owed | | $1,392,983.87 |

(2) a subsequent action between the same parties or their privies;

(3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and

(4) an identity of causes of action.

***Bittinger v. Tecumseh Prods. Co.***, 123 F.3d 877, 880 (6th Cir. 1997). When all four elements are present, a claim that was or could have been raised previously is precluded as a matter of law. *See **CoreStates Bank, N.A. v. Huls Am., Inc.***, 176 F.3d 187, 194 (3d Cir. 1999).

There is no dispute that the first two elements of res judicata have been met. The Court's orders granting retention and compensation were final orders in the context of bankruptcy law, ***Boddy v. U.S. Bankr. Court (In re Boddy)***, 950 F.2d 334, 336 (6th Cir. 1991), and privity exists because the Trustee steps into the shoes of the debtors as a "successor in interest." ***Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.,*** 973 F.2d 474, 481 (6th Cir. 1992). The remaining elements, which are contested, are whether this preference matter was or should have been litigated in the prior action and whether there is an identity of causes of action.

The Court agrees with Rothschild that whether the pre-petition payments constituted preferences is a matter that should have been litigated or resolved by the Retention Order and

the Order Approving Final Compensation because sufficient information was disclosed in both the retention and fee applications to raise the issue.

The Court has found no cases from the Sixth Circuit examining whether retention and compensation orders are res judicata as to later filed preference claims. Two Delaware cases that have been relied upon by both the parties turn on whether the applications for retention and/or compensation contain sufficient information to put all parties and the Court on notice of a potential preference. In the last of these cases, ***BCPM Liquidating LLC v. PricewaterhouseCoopers LLP (In re BCP Mgmt., Inc.)***, 320 B.R. 265 (Bankr. D. Del. 2005) (hereinafter "***BCPM***") (relied upon by Rothschild), an accounting firm had provided sufficient information of some pre-petition payments in its retention application and supporting affidavit but not others. The court held that those payments that were disclosed should not be subjected to further challenge in later preference litigation under principles of res judicata. However, those undisclosed pre-petition payments could be the subject of later litigation. In contrast, in an earlier unreported case, ***PHP Liquidating LLC v. PricewaterhouseCoopers LLP (In re PHP Healthcare Corp.),*** No. 98-2608JKF, 00-665, 2002 WL 923932 (Bankr. D. Del. May 7, 2002) (hereinafter "***PHP***") (relied upon by the Trustee), the preclusive effect of the final compensation order and later preference claims was denied because the application for compensation did not disclose ***any of the transactions*** which might have put parties on notice of potential preferences.

10 - U.S. Bankruptcy Court, M.D. Tenn.

While the Sixth Circuit has not addressed the precise issue here, its decisions regarding disinterestedness and disclosure certainly underscore the seriousness with which it views the duty of professionals to disclose in retention papers. ***See generally Mapother & Mapother, P.S.C. v. Cooper (In re Downs),*** 103 F.3d 472 (6th Cir. 1996). Since district courts in this circuit have held that holders of a preference "are not disinterested," ***In re 419 Co.,*** 133 B.R. 867, 870 (Bankr. N.D. Ohio 1991); ***In re Decor Corp.,*** 171 B.R. 277, 284 (Bankr. S.D. Ohio 1994), and since the Sixth Circuit has required disgorgement of fees when conflicts are not disclosed, ***Big Rivers Elec. Corp. v. Schilling (In re Big Rivers Elec. Corp.),*** 355 F.3d 415 (6th Cir. 2004) (examiners' fees), it is safe to assume that the Sixth Circuit will require fairly extensive disclosures of pre-petition payments in retention and compensation applications to stave off later preference litigation through the application of the res judicata principles it has set forth in ***Bittinger v. Tecumseh Prods. Co.,*** 123 F.3d 877, 880.

In the instant case, the Retention Application and accompanying affidavit meet both the Sixth Circuit's concerns with disclosure and with the requirements in ***BCPM*** and ***PHP***. While at first reading, the Court was concerned that the attached Letter Agreement and the various exhibits required creditors and the United States Trustee to be seekers in a game of "hide and seek" amongst a variety of documents to understand the pre-petition payments to Rothschild, further examination reveals otherwise. Unlike in ***BCPM*** and ***PHP***, the Retention

Application and affidavit disclosed that Rothschild received payments of $764,333.97 (the amount being sought by the Trustee) for services and expenses[2] during the one-year period prior to the bankruptcy and that its monthly fee was $150,000. The Letter Agreement which was attached was not simply backup material – it set forth the entire relationship of the parties for both pre- and post-petition compensation. It demonstrated that Rothschild was employed by the debtors on November 4, 2002, which was 140 days prior to the bankruptcy filing. This information was sufficient to alert interested parties that most, if not all, of the fees and expenses were from the 90-day preference period. It should be noted here that the United States Trustee examined the Letter Agreement closely and initially objected to the retention of Rothschild on other grounds. The Agreed Retention Order was then entered which addressed and amended the Letter Agreement.

Moreover, interested parties were given a second opportunity to address any potential preference during the final compensation process, and the Order Approving Final Compensation necessarily addresses the pre-petition fees. Specifically, the amount owed to Rothschild was reduced as a result of the payments it received pre-petition. Rothschild was entitled to a Completion Fee, payable in cash, upon confirmation and effectiveness of a plan

---

[2] The pre-petition fees listed are $701,120.03. The amount of the preference claimed is $764,337.97. No proof was offered as to the difference in these figures. Unless the complaint is in error, the only logical conclusion based on sworn testimony and exhibits is that the difference is made up of expenses generated between November 4, 2002, and March 24, 2003, which were to be compensated pursuant to the Letter Agreement.

of reorganization equal to $2,750,000.00 minus a credit equal to 50% of the monthly fees paid to Rothschild. As shown by the Final Application, the monthly fee credit included monthly fees paid by the debtors to Rothschild pre-petition. The pre-petition payments were not properly treated as "credits" except to the extent that they were payments that had legitimately been made and that Rothschild was entitled to keep. Interested parties were given an opportunity to object to the Final Application, and no objections were filed. By approving the final compensation and the amount of the credit, the Court essentially resolved the legitimacy of the pre-petition payments.

The Trustee argues that "[w]ithout any such explicitly pled connection between the retention of the professional and the professional's potential preference liability the Trustee's preference claims are not of the type that should have been litigated against Rothschild in the context of Rothschild's post-petition retention pleadings." With this argument, the Trustee insists that Rothschild was required to disclose specifically that there was a potential preference claim, even though the compensation and credit calculations made that clear. Ironically, this would be a much higher degree of specificity than the Trustee would have us require of the debtors in the Disclosure Statement and confirmed Plan. This argument is without merit. The Applications for Retention and Final Compensation provided sufficient information for any preference issues to be raised at that time.

The final element, the identity of causes of action, is satisfied where there is "an identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chem. Co., Inc. v. Kulick,* 656 F.2d 1224, 1227 (6th Cir. 1981). Here, the pre-petition payments that are at issue in this adversary proceeding are exactly the same pre-petition payments credited against the Completion Fee and addressed by the Retention Orders and the Order Approving Final Compensation when disinterestedness was determined. To hold otherwise would allow the Trustee to seek the benefit of the credits for pre-petition payments and then turn around and seek to recover the same pre-petition payments.

Since the four factors identified by the Sixth Circuit in *Bittinger v. Tecumseh Prods. Co.,* 123 F.3d 877, 880, are satisfied here, the Retention Order, and more importantly, the Order Approving Final Compensation are entitled to res judicata effect on the issue of preferences. Accordingly, the Court finds that Rothschild is entitled to summary judgment. Nevertheless, the Court will address the remaining issues raised.

## B. RES JUDICATA EFFECT OF CONFIRMATION

Rothschild also argues that the res judicata effect of the Confirmation Order, Disclosure Statement, and Plan require that this adversary be dismissed. Other "preference" defendants and "insider" defendants in certain other adversary proceedings brought by the Trustee raised this exact argument. In a separate Memorandum Opinion, entered September 14, 2006, this Court found that sufficient notice was given in the debtors' Plan and Disclosure Statement to preserve the Trustee's causes of action, and thus, these actions are not barred by res judicata. For the same reasons, Rothschild's assertion on this issue is not well taken.

## C. JUDICIAL ESTOPPEL

Finally, Rothschild asserts that the Trustee should be barred from asserting a preference based on judicial estoppel because: (1) the debtors asserted in their Retention Application a contrary position to the one taken by the Trustee now – that Rothschild was disinterested; and (2) the Disclosure Statement and Plan did not include any reference to the preference claims against Rothschild.

The doctrine of judicial estoppel bars a party from asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding where the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition. ***Teledyne Indus., Inc. v. NLRB***, 911 F.2d 1214, 1218 (6th Cir. 1990). Judicial estoppel is

an equitable doctrine invoked at a court's discretion. *Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447, 453 (6th Cir. 2005) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).

The Sixth Circuit has stressed that the doctrine of judicial estoppel is utilized in order to preserve "the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218. The evil to be avoided is colorfully described as "the perversion of the judicial machinery," "playing fast and loose with the courts," "blowing hot and cold as the occasion demands," and "hav[ing] [one's] cake and eat[ing] it too." *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988) (citations omitted) (alterations in original).

In determining whether to apply the doctrine of judicial estoppel, the courts consider three factors: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party successfully persuaded a court to accept this previous position; and (3) whether the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447, 452-53 (citations omitted).

As to Rothschild's argument regarding the debtors' position in the Retention Application, this is quite a different case from the usual one where these factors for judicial estoppel have been applied. While the debtors did make a representation in the Retention and Fee Applications that Rothschild held no adverse interest to the debtors, this representation was based explicitly upon the sworn representations of Rothschild itself, most notably upon the Declaration of David L. Resnick, Managing Director of Rothschild, that Rothschild had "no material connection with the Debtors" and was "disinterested." As a caveat, Mr. Resnick and, thus the debtors, further stated that Rothschild had no material connection with interested parties except that, among other things, Rothschild rendered pre-petition services to the debtors, payment for which had been made monthly pre-petition pursuant to the Letter Agreement. If the Trustee, standing in the shoes of the debtors, is playing fast and loose with the Court, Rothschild is equally complicit in this game. Neither is guilty of gaming the system, especially considering the factual exceptions noted by Rothschild and parroted by the debtors, although both might be faulted for their parallel legal conclusions of disinterestedness. Simply stated, the Trustee should not be judicially estopped from pursuing preference claims by the debtors' statements in early motions made in total reliance upon sworn statements by the preference defendant.

Similar reasoning was used in *BCMP*, 320 B.R. 265, relied upon by Rothschild. There, the accounting firm hired by the debtor pre-petition and then retained by the debtor post-petition argued that a later preference action should be barred by application of judicial

estoppel. The court declined to so hold, reasoning that the information provided by the debtor in the retention application was supplied by the accounting firm, and that "[t]he inconsistencies here are because of inconsistent underlying facts, including facts represented by [the accounting firm] in the first proceeding that are inconsistent with the facts alleged in the [preference action]." *Id.* at 279. For the same reasons, the Court declines to apply the doctrine of judicial estoppel to the debtors' statements in the Retention Application.

As to Rothschild's argument that judicial estoppel should apply because the debtors' did not specifically reserve the preference action against Rothschild in the Disclosure Statement and Plan, the same factual analysis relied upon in the res judicata section above, as well as the Court's previous Memorandum Opinion in the preference cases against other defendants, applies here. There was adequate reservation of potential causes of action in the Disclosure Statement and Plan, and judicial estoppel should not bar this action.

### IV. CONCLUSION

Accordingly, the Court finds that Rothschild's Motion to Dismiss, or in the Alternative, for Summary Judgment should be granted in that the Trustee's preference action is barred by the res judicata effect of the Retention and Compensation Orders.

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**